Mr. Chief Justice Johnson delivered the opinion of the Court. The question to be decided here is, whether the evidence is of such a character as to charge the appellants with the debt for which the suit was instituted. It appears, from the testimony, that a certain John M. Young had previously applied to the ap-pellees to purchase goods upon a credit, which they refused to do, and that, upon their refusal, the appellants said to the witness, Broadway, who was acting as the clerk of the appellees, that if he would let Young have goods, and he did not pay for them, they would do so. It is also in proof that the goods taken up by Young were charged in the books of the appellees to Young by Kurtz, and that credit was given to Young upon the faith of the solvency of appellants. In order to fix a legal liability upon the appellants for the debt of Young, a distinction is attempted to be taken between a debt pre-existing and one contracted subsequent to the date of the promise or guaranty. This supposed distinction is not believed to be known to the statute of Frauds. The statute declares that “No action shall be brought to charge any person upon any special promise to answer for the debt, default, or miscarriage of another, unless the agreement, promise or contract upon which such action shall be brought, or some memorandum, or note thereof, shall be made in writing and signed by the party to be charged therewith, or signed by some other person by him thereunto properly authorized.” The point now to be determined is, whether the court below erred or not in permitting the evidence to go the jury. The case of Elder vs. Warfield. (7 Har. & John. 394,) is directly in point. At the trial in that case, the plaintiff (the appellee) offered in evidence, by Alfred Warfield, his brother and clerk, that, in the year 1817, the plaintiff was applied to by Joseph Berritt, to furnish him with necessaries for his family on credit; that the plaintiff, having doubts of Berritt’s solvency, declined to do so, and refused to let him have the goods he applied for. That at the time defendant lived on part of farm belonging to Berritt’s wife, in what character, whether as manager, overseer, or trustee, he knew not. That subsequently the defendant called and requested the plaintiff, through the witness, to let Berritt have goods, &c., which he wanted, and told the plaintiff that Berritt was perfectly solvent, and did not owe more than $500, and was willing and able to pay his debts: that Berritt had recently sold property in Baltimore for a considerable sum of money, and the plaintiff should be paid out of it. The plaintiff still doubted, when the defendant told him to let Berritt have goods, and he would be responsible for the amount, and pay it out of the proceeds of the sale of Berritt*s property, which he (the defendant) expected to receive. This agreement was not reduced to writing, or any memorandum made of if. The plaintiff, in the years 1817, 1818 and 1819, let Ber-ritt have various goods, wares, and merchandize. The plaintiff further gave evidence, by tbe same witness, that, after conversation aforesaid between the plaintiff and defendant, Berritt, upon his orders, obtained, at different times, goods aud merchandize, to the amount of $523, being tbe same goods and merchandize for the recovery of whose value the action was brought. He also offered other evidence, but wholly failed to show that tbe defendant’s promise was reduced to writing. The statute of Maryland is substantially the same with our own, and, as such, the same must necessarily be tbe construction of both. The court of appeals of that Slate, when speaking in reference to their statute of Frauds, said that “A strict adherence to the letter would, it is believed, have prevented much litigation, of which the introduction of exceptions has proved a fruitful source; it may now, however, be assumed as the settled construction of that branch of the 4th section on which this caso depends, that every collateral undertaking or promise to answer for the debt, default, or miscarriage of another, is within the statute and void if not in writing, but that original undertakings are not within the statute, and need not be in writing. Collateral and original-have become the technical terms whereby to distinguish promises that are within and such as are not within the statute. And as they are terms not used or defined in the statute itself, it may here be proper to notice the general distinguishing characteristics of collateral and original promises, as understood in relation to the statute of Frauds. Where there is a pre-existing debt or other liability, a promise by a third person having immediate respect to and founded upon the original liability, without any new consideration moving to him to pay or answer for such debt or liability, is a collateral undertaking, as in the case of Fish vs. Hutchinson, (3 Wils. 94,) which was an action founded on a promise of the defendant to pay a debt due from one Nickers to Fish, (for which Fish had brought suit) in consideration that Fish would stay his action against Nickers, which being a promise to pay the still subsisting debt of another was held to be clearly within the statute. And so in Kirtham v. Martin, (2 Barn. & Ald. 613,) where A. having wrongfully killed the horse of B., a promise by C. to pay B. the damages he had sustained in consideration that he would not sue A. was adjudged to be within the statute. But where distinct from the original liability, there is a new and su-peradded consideration for the promise moving between the party promising and him to whom the promise is made, in such case it is an original undertaking, as in Williamsvs. Leper,(3 Burr. 1836,) where the defendant having got possession of goods, which were subject to distress for rent in arrear, promised the Landlord (the plaintifl') to pay the rent if he would desist from distraining. There are many cases proceeding upon this distinction between a promise founded upon the liability alone of a third person and one which is induced by a distinct and superadded consideration moving between the immediately contracting parties, as Austey vs. Marden, (4 Bos. & Pull. 130,) Castling vs. Auhert, (2 East 325,) and Read vs. Nash, (1 Weds. 305.) Again, where there is no previously existing debt or other liability, but the promise of one is the inducement to and ground of the credit given to another, by which a debt or liability is executed, such a promise is a collateral undertaking. The general rule being that wherever the party undertaken for is originally liable upon the same contract, the promise to answer for that liability is a collateral promise, and must be in writing. As if B. gives credit to C. for goods sold and delivered to him on the promise of A. to see him paid or to pay him if C. should not, in that case it is the immediate debt of C. for which an action will lie against him, and the promise of A. is a collateral undertaking to pay that debt, he being only as security. But where the party undertaken for is under no original liability the promise is an original undertaking, and binding upon the party promising without being in writing. Thus, if B. furnishes goods to C. on the express promise of A. to pay for them, as if A. says to him let C. have goods to such an amount, and I will pay you, and the credit is given to A., in that case C. being under no liability, there is nothing to which the promise of A. can be collateral, bul A. being the immediate debtor it is bis original undertaking and not a promise to answer for the debt of another.” That case, and the others cited by the court, are perfectly conclusive of the question involved in the case at bar. Here, it is true, there was no pre-existing debt, but, on the contrary, it was subsequently contracted, and that, too, upon 'the promise of the appellants, operating as the inducement to and ground of the credit given to Young. We are satisfied, therefore, that the promise or guaranty made by the appellants to pay for the goods, in case Young should fail to do so, was a mere collateral undertaking, and not being reduced to writing, is clearly within the statute of frauds. Under this doctrine, it is obvious that the Circuit Court erred in refusing to exclude the testimony offered by the appellees, and also in giving the instructions which it did give to the jury. The judgment is therefore reversed, annulled, and set aside, with costs, and the cause remanded, to be proceeded in according to law, and not inconsistent with this opinion.